**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ADELISA LOPES,<br>Plaintiff,<br><br>v.<br><br>DOLLAR TREE STORES, INC.,<br>Defendant. | ) | C.A. No. 25-cv-356-MRD-AEM |

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

The dispute before the Court revolves around an Arbitration Clause in an Employment Contract between Plaintiff Adelisa Lopes and Defendant Dollar Tree Stores. That Contract was signed in 2018, and the Arbitration Clause was updated in October 2020. Dollar Tree fired Lopes in 2023 which Lopes contends violates both the Federal, and Rhode Island version, of the Family and Medical Leave Act. Dollar Tree filed a Motion to Stay and to Compel Arbitration (ECF No. 7), but Lopes argues she is not bound by the Arbitration Agreement. For the following reasons, the Court GRANTS Dollar Tree's Motion.

## I. BACKGROUND

Adelisa Lopes worked at Dollar Tree in Pawtucket for over 7 years until she was fired after taking a leave of absence to deal with a personal health issue that required surgery. ECF No. 1 ¶¶ 8, 11. Lopes was employed as an assistant manager at the time she was fired. *Id.* ¶ 10. In July 2023, Lopes notified Dollar Tree

management that her surgery was scheduled for August 1 and that she would be out of work for the procedure and recovery. *Id.* ¶¶ 11–13. Dollar Tree management told her to contact Sedgwick, which was an outside human resources agency. *Id.* ¶ 15. Consistent with what she was told, Lopes notified Sedgwick that her expected recovery time was six to eight weeks, and she alleges a Sedgwick employee told her she was "all set" for leave. *Id.* ¶¶ 16–17.

After the surgery, Sedgwick asked Lopes to have her doctor fill out a form, a request with which she complied. *Id.* ¶¶ 18–19. The surgeon filled out the form and, as instructed, faxed it to the number provided. *Id.* ¶ 21. This process—getting a doctor's note and faxing it in—repeated because Lopes' recovery was extended into October. *Id.* ¶ 22. Upon being cleared to return to work, Lopes learned that her employment had been terminated due to her absence from work while recovering from surgery. *Id.* ¶ 23.

Going back to 2018, Lopes was hired and onboarded at Dollar Tree consistent with the onboarding process for new associates. Votta Decl. ¶¶ 7, 18; ECF No. 7-2. According to Vincent Votta, who has been the Manager of Talent Acquisition for Dollar Tree Management since 2015, new associates are required to sign the Arbitration Agreement during the onboarding process, which is presented to them "through a secure and confidential website, called Dollar Tree Onboarding ('DTO')." *Id.* ¶ 8. After a manager signs into DTO, the associate works through the paperwork, inputting personal information and reviewing/executing required documents, such as the Arbitration Agreement and Arbitration FAQs. *Id.* ¶ 8–10. To complete the

onboarding process and prior to submitting the forms to Dollar Tree, the associate is required to check an acknowledgment box that the Arbitration Agreement was read and executed and submit an electronic signature. *Id.* ¶¶ 11–13. Dollar Tree's position is that this process was followed when Lopes was onboarded on April 10, 2018. *Id.* ¶ 15. According to Votta, Lopes "was required to read and execute several documents, including the Arbitration Agreement … [and] Lopes clicked to agree that she had 'received and read the Mutual Agreement to Arbitrate Claims, and [she] agree[d] to its terms' … and she electronically signed the Arbitrations [FAQs] on the same day." *Id.*

In October 2020, Dollar Tree updated its Arbitration Agreement and notified its employees of the update in three ways: mailing the agreement to employees' home addresses, placing a notice on each pay statement for six weeks, and posting notice of the Agreement in each store's break area. ECF No. 7-1 at 3. "The mailer, posted notice, and notice on the pay statements notified all current [employees] that, if they continued their employment through December 10, 2020, they would be bound by the Arbitration Agreement." *Id.* The parties agree that Lopes was terminated in August 2023. Votta Decl. ¶ 19; ECF No. 1 ¶¶ 20, 23.

## II. LEGAL STANDARD

"A party seeking to compel arbitration under the FAA must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Dialysis Access Ctr., LLC v. RMS Lifeline,*

*Inc.*, 638 F.3d 367, 375 (1st Cir. 2011) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)). Courts defer to Section 4 of the FAA to determine whether there is a basis upon which the court may review a motion to compel arbitration. *See Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021). Section 4 provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. In *Air-Con Inc.*, the First Circuit joined other Circuit Courts in requiring district courts to apply the summary judgment standard when analyzing motions to compel arbitration. *Id.* at 175.

When applying the summary judgment standard, "the Court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (citing *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92 (1st Cir. 2021). "If the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." *Id.* (quoting 9 U.S.C. § 4). When objecting to arbitration, "the non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute

for trial.'" *Soto v. State Indus. Prods. Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir 2002)).

## III. DISCUSSION

Dollar Tree's Motion asks this Court to enforce the Arbitration Agreement and stay proceedings. ECF No. 7 at 1. Its primary argument is that the "Arbitration Agreement requires that the arbitrator decide issues of arbitrability, including substantive issues of arbitrability." ECF No. 7-1 at 8–9 (quotation modified). In her Opposition, Lopes contends that she did not agree to the 2016 Arbitration Agreement during her 2018 onboarding. ECF No. 18 at 8–10. She also suggests that she never received notice of the updated 2020 Agreement and, thus, argues that she is not bound by its terms. *Id.* at 10–18. Lopes' final argument is that the 2020 Agreement is ambiguous as to coverage and so it does not apply to her. *Id.* at 18–20. Responding to these arguments, Dollar Tree maintains that these issues must be submitted to an arbitrator and that Lopes is bound by the Arbitration Agreement because her continued employment was sufficient consideration to form a binding agreement. ECF No. 19 at 4–5, 9–11. Dollar Tree argues that it is indisputable that Lopes received notice of the 2020 Agreement in the mail, and that the Agreement's "integration clause precludes Lopes' argument that the 2020 Agreement is effective only as to Associates with existing arbitration agreements." *Id.* at 5–9.

As this Court sees it, if there is "'clear and unmistakable evidence' [to] delegate issues of arbitrability to the arbitrator, 'th[is] court[] must respect the parties' decision as embodied in the contract' and send the issue to the arbitrator to decide."

*Bossé v. New York Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 65 (2019)). For a delegation clause to apply, there must be a valid contract between the parties. *Id.* (collecting cases); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). To establish a valid contract under Rhode Island law,[1] there must be (1) competent parties, (2) subject matter, (3) consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Britto v. St. Joseph Health Servs. of R.I.*, C.A. No. 17-234 WES, 2018 WL 1934189, at *2 (D.R.I. 2018) (citing *Voccola v. Forte*, 139 A.3d 404, 414 (R.I. 2016)). Lopes' primary contention is that there was no consideration or mutuality of agreement. The record before the Court leads it to the opposite conclusion.

**A. Lopes was originally bound by the 2016 Arbitration Agreement.**

Lopes argues that she did not agree to the 2016 Arbitration Agreement and points to the fact that her name was signed in all lowercase letters—"adelisa lopes"—rather than capitalizing the "A" and "L" in her first and last name. ECF No. 18 at 4, 9; ECF No. 18-1 at 2–3. The problem for Lopes is that her name is signed as "adelisa lopes" on other documents as well. For example, in response to her attorney's discovery requests, Dollar Tree produced a W-4 which includes Lopes' all-lowercase name, social security number, home address, and noting her tax filing status as "single." ECF No. 20-3 at 44. The W-4 notes that it was "[e]lectronically [s]igned on 04/10/2018 09:10 AM ET[.]" *Id.* The RI W-4 also shows an all-lowercase name, Lopes'

[1] While Lopes contests whether a valid agreement exists, both parties apply Rhode Island law throughout their analyses, so the Court will do the same. *See* ECF No. 7-1 at 9–10; ECF No. 18 at 10–11.

social security number, and was electronically signed on the same time and date. *Id.* at 45.

Beyond Lopes' assertion, in response to an interrogatory, that she "like[s] to read and [she] know[s] how to capitalize [her] name[,]" nothing in the record suggests that there is a genuine dispute of material fact on whether she signed the 2016 Agreement during her onboarding on April 10, 2018. ECF No. 18-1 at 3; *see Aldea-Tirado v. PricewaterhouseCoopers, LLP*, 101 F.4th 99, 105 (1st Cir. 2024) (finding an arbitration agreement binding when an employee failed to point to evidence in the record that directly contradicted that the employee received the agreement). Instead, this assertion appears to be no more than a self-serving statement, and "although it is true that [sworn statements] may be self-serving and yet still present genuine issues of fact … it is also true that sworn statements that are *filed in conjunction* with oppositions to summary judgment motions may be disregarded if they appear to be merely an attempt to manufacture issues of fact." *J.S.H. v. Newton*, 765 F. Supp. 3d 1, 12 (D. Mass 2025) (citing *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380. 387 (1st Cir. 2016)). Considering the record as a whole, including the multiple all-lowercase signatures, the personal identifying information on the onboarding documents, and the timing of the self-serving statement, this Court concludes that the 2016 Arbitration Agreement was binding on Lopes.

**B. Lopes' continued employment makes 2020 Arbitration Agreement binding.**

More relevant to whether Lopes' claims are arbitrable is the 2020 Arbitration Agreement. That agreement "revis[ed] certain provisions in [the] current Arbitration

Agreement by replacing it with a new Arbitration Agreement." ECF No. 7-3 at 3. Lopes argues that "[t]he papers and conduct proffered by Dollar Tree cannot meet Rhode Island common law's stringent requirements to find that a contract was formed by silence." ECF No. 18 at 10. Specifically, she argues that her silence cannot be interpreted as assenting to the 2020 Agreement. *Id.* at 11. Dollar Tree points to the fact that employees, including Lopes, were notified of the updated Agreement in three different ways, and that the notice sent to the employees expressly stated that "continuing employment is conditioned on and made in consideration of this Agreement." ECF No. 7-1 at 10–11; *see* ECF No. 7-3 at 3. In making this argument, Dollar Tree relies on *Britto v. St. Joseph Health Services of Rhode Island*, where a Judge in this District applying Rhode Island law found that an "[a]greement remains enforceable because it was supported by independent valid consideration: Plaintiff's continued employment." 2018 WL 1934189, at *3 (citing *Oken v. Nat'l Chain Co.*, 424 A.2d 234, 237 (R.I. 1981) ("[t]he continuation of [plaintiff's] employment was sufficient consideration … [Plaintiff] had the option of continuing on [defendant-employer's] terms or leaving the company. He chose the former.").

That said, this can only be the case if Lopes had notice of the agreement, which she claims she did not. Still, her argument strains credulity based on the record before the Court, which consists of several affidavits and time-clock records. The record makes clear that Dollar Tree notified employees of the updated Agreement by posting the following message on paystubs: "New arbitration agreement applies to associates employed on December 10, 2020." Tutton Decl. ¶ 4; ECF No. 7-4.

According to Melissa Tutton, Payroll Director for Dollar Tree Management, LLC since March 2018, that message "appear[ed] on pay statements issued during the period from November 6, 2020 through December 4, 2020." Importantly here, Tutton declares that the message was attached Lopes' pay statements. *Id.* ¶¶ 2, 4–5. In fact, that notification appears on each of Lopes' pay statements in bold font. *Id.* at 3–5. Lopes nonetheless claims she never viewed her pay stubs. ECF No. 18-1 at 6.

To support its position, Dollar Tree submits a declaration from Jonathan Cobb who, in 2020, was employed by Dollar Tree as the Field Communications Manager. Cobb Decl. ¶ 1; ECF No. 7-5. Cobb explains that "[o]n or about October 26, 2020, [he] used [Dollar Tree's internal communications system] to assign a task to each store to post a document relating to Dollar Tree's new arbitration agreement." *Id.* ¶ 5. Cobb goes on to note that "each store was required to print the document and post it in the break area [,]" and that the store manager at Lopes' location "indicat[ed] that the task had been completed[.]" *Id.* ¶¶ 7–8. The declaration also attaches the notice which clearly states at the top "ANNOUNCING A NEW 2020 ARBITRATION AGREEMENT" and, in bold font, "[i]f you are employed by the Company on December 10, 2020, you will be bound by the new Arbitration Agreement, without any further action on your part. * You do not need to sign the new Arbitration Agreement." *Id.* at 3. In response, Lopes claims she rarely used the break room and that, even when she did, she never saw the announcement. ECF No. 18-1 at 6. This is a self-serving statement and not enough to create a genuine dispute of material fact.

But Dollar Tree goes further than simply submitting the Cobb Declaration and the notice posted in the break room. Dollar Tree also submits Lopes' time clock records which indicate that she clocked in and out more than 100 times from October 31, 2020 through December 9, 2020. ECF No. 20-3 at 1–38. Particularly compelling, and not substantively refuted by Lopes, is the Declaration by Paul Jones, the Director of Business Solutions for Store Operations for Dollar Tree Management, which explains that notice of the updated Arbitration Agreement was posted on the time clock beginning on October 28, 2020 and remaining through, at least, February 2022. Jones Decl. ¶¶ 1, 3; ECF No. 20-3.

Finally, Dollar Tree mailed the updated Agreement to each employee and used a third-party agency, Toppan Merrill, to assist with those mailers. DiBianca Decl. ¶¶ 2–5; ECF No. 7-3. A Declaration from Ronald DiBianca, Mail Production Manager for Toppan Merrill, explains that the following process took place: (1) "Dollar Tree asked Toppan Merrill to prepare and send arbitration agreement mailers, in English and Spanish," to over 200,000 people, (2) Dollar Tree provided Toppan with the names and last known addresses for these individuals, (3) "Toppan Merrill then conducted a National Change of Address (NCOA) search and updated the addresses for those individuals based on the most up to-date USPS database available for the supplied names and addresses[]," and that the arbitration mailers were sent out on October 23, 2020. *Id.* Lopes contends that she never received this mailer, and attributes it to the fact that it was sent to 171 Reynold Avenue, Providence, RI 02905 instead of 171

Reynold Avenue, 3rd Floor, Providence, RI 02905. ECF No. 18 at 4, 11, 14–15; ECF No. 18-1 at 5–6.

While the Court is skeptical about Lopes' claim that she never received the mailer, it need not engage in that analysis or the parties' arguments about the mailbox rule because the record overwhelmingly supports Dollar Tree's position that Lopes had notice of the updated Arbitration Agreement and that her continued employment was sufficient consideration for that Arbitration Agreement. ECF No. 19 at 4–5; *see Aldea-Tirado*, 101 F.4th at 109 (explaining that a mass email with an arbitration agreement attached was sufficient to put employee on notice that her continued employment would constitute wavier of right to litigate claims).

**C. Lopes' claims must be dealt with in arbitration.**

Dollar Tree primarily argues that the updated Agreement covers employment-related claims and delegates questions of arbitrability to the arbitrator. ECF No. 7-1 at 4–5. The Arbitration Agreement explicitly states:

> The arbitrator shall have the exclusive authority to resolve any disputes or claims regarding arbitrability or the formation, interpretation, validity, applicability, unconscionability, or enforceability of this Agreement or any provision of this Agreement except as otherwise provided herein.

ECF No. 7-3 at 10. Contrary to Lopes' contention, there is nothing ambiguous about this clause. Since Lopes is bound by the 2020 Agreement and the Agreement contains this delegation clause, the Court must simply enforce the agreement and require her claims to be submitted to arbitration. *See Air-Con, Inc.*, 21 F.4th at 174 (stating that "the FAA requires courts to treat arbitration as 'a matter of contract' and enforce

agreements to arbitrate according to their terms") (quoting *Henry Schein, Inc.*, 586 U.S. at 67).

## IV. CONCLUSION

Lopes' attempts to deny the facts in the record without "put[ting] forward materials that create a genuine dispute of fact" are not well received by this Court. *Air-Con, Inc.*, 21 F.4th at 175. As the First Circuit explained, "the 'non-moving party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party *must identify specific evidence in the record* demonstrating a material factual dispute for trial.'" *Aldea-Tirado*, 101 F.4th at 103 (quoting *Air-Con, Inc.*, 21 F.4th at 175 n.8) (emphasis added). An employee cannot bury her head in the sand and then fault the employer for the resulting darkness.

Accordingly, Dollar Tree's Motion to Stay and to Compel Arbitration (ECF No. 7) is GRANTED. This matter is STAYED pending the parties' arbitration.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

08/28/2026